```
              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      )
                              )   Crim. No. 07-61
     v.                       )
                              )
NATBEYE KOUMBAIRIA,           )
                              )
          Defendant.          )
```

Government's Consolidated Memorandum Of Law In Opposition To Defendant's Motion To Suppress Tangible Evidence And Defendant's Motion To Suppress Tangible Evidence Seized By Search Warrant

The United States of America, by and through the United States Attorney for the District of Columbia, hereby opposes defendant Natbeye Koumbairia's motions to suppress tangible evidence and to suppress tangible evidence seized by search warrant.

## Introduction

Defendant Koumbairia has been charged in a one-count indictment with being a felon in possession of a firearm and ammunition, on or about March 6, 2007.  He has pled not guilty.  The charge stems from the recovery on that date of a firearm and ammunition during the execution of a search warrant, by law enforcement officers from the Metropolitan Police Department and the U.S. Secret Service, at the defendant's residence at 5125 Eighth Street, N.W., Washington, D.C.  The warrant had been issued the previous day by the Honorable John M. Facciola, U.S. Magistrate Judge, and authorized a search for evidence of bank fraud.

Recovered during the search was a .45 caliber ACP High-Point handgun, loaded with nine rounds in the magazine and one in the chamber; and 39 additional rounds of .45 caliber ammunition.[1] In addition, at the time of the execution of the search warrant, there was also a warrant pending for the defendant's arrest for bank fraud. When the agents and officers discovered the defendant in the residence, he was promptly taken into custody.

In his motions, defendant Koumbairia seeks suppression on the grounds that the agents violated the knock-and-announce statute, 18 U.S.C. 3109; that they failed to timely provide a copy of the warrant; and that they lacked probable cause to conduct the search. These arguments are meritless.

### Argument

1. <u>Violation of The Knock-and-Announce Rule Is Not Grounds For Suppression.</u>

Title 18, U.S. Code, section 3109, provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

In <u>United States v. Ramirez</u>, 523 U.S. 65 (1998), the Supreme Court held that the above statute codifies the common law and

---

[1] Also seized were computers, various electronic media, a printer, credit cards, documents, cell phones, checkbooks, a scale, and a quantity of marijuana.

Anglo-American tradition that law enforcement officers provide prior notice before forcibly entering a house. Id. at 73. Ramirez further held that the statute codifies the exceptions to the requirement that exist when there are exigent circumstances. Id. Such exceptions include the threat of physical violence, see Wilson v. Arkansas, 514 U.S. 927, 935-36 (1995); or a reasonable belief that such notice would be futile or lead to the destruction of evidence, see Richards v. Wisconsin, 520 U.S. 385, 394 (1997).

Wilson and Richards both involved Fourth Amendment challenges to searches of houses based on the failure of the police to adequately announce their presence prior to entering.[1] Ramirez, decided three years after Wilson, instructs that Fourth Amendment caselaw in this area serves as "guideposts" in interpreting 18 U.S.C. § 3109. Ramirez, 523 U.S. at 73. Thus, even if defendant's argument regarding the knock-and-announce rule is construed to include a Fourth Amendment argument, the analysis is the same. See United States v. Southerland, 373 U.S. App. D.C. 305, ___, 466 F.3d 1083, 1085-86 (2006) ("The short of the matter is that § 3109 and the Fourth

---

[1] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

3

Amendment have merged . . . in the standards governing entries into the home."), cert. denied, 127 S. Ct. 1361 (2007).

That analysis must begin with whether the remedy of suppression is even available for violations of the knock-and-announce rule. It is not. In Hudson v. Michigan, 126 S. Ct. 2159 (2006), police in Michigan had a warrant to search for firearms and drugs at the home of one Booker Hudson. Id. at 2162. When they arrived to execute the warrant, they announced their presence but waited only "three to five seconds" before entering Hudson's home. Id. This, Michigan conceded before the Supreme Court, was a violation of the Fourth Amendment's knock-and-announce rule. Id. at 2163. The issue before the Court was whether the remedy of suppression, or application of the exclusionary rule, was available. The Court concluded that because the knock-and-announce rule is designed to protect human life and limb, and property, from the violence that might accompany an unannounced entry by the police, and because the rule does not address one's interest in preventing the police from seeing or taking property described in a warrant, the exclusionary rule did not apply. Id. at 2165.

Ramirez makes the Fourth Amendment principle in Hudson equally applicable to asserted violations of 18 U.S.C. § 3109. Simply put, there is no suppression remedy for violations of the statute. Southerland, 373 U.S. App. D.C. at ___, 466 F.3d at

1084-86 (interpreting D.C. Code § 23-524, a statute applicable to Metropolitan Police Department officers that incorporates the standards of § 3109); U.S. v. Jenkins, 207 Fed. Appx. 3, *4 (D.C. Cir., Nov. 16, 2006) (unpublished) (involving direct application of § 3109).

Accordingly, even if there was a violation of the knock-and-announce rule in this case, there is no grounds for suppression of any recovered evidence.[2]

>   2.  There Is No Requirement That Law Enforcement Officers Provide A Copy Of A Search Warrant For A Residence To The Occupants Prior To Conducting The Search, And If There Is Such A Requirement, The Remedy Of Suppression Is Unavailable.

In his Motion to Suppress Tangible Evidence, the defendant asserts that "F.R. Cr. P 41(d) requires agents of the government to present the owner/occupant of the premises to be searched with a complete copy of the warrant at the outset of the search of the

---

[2] In addition, the government disputes that there was any violation. Prior to entering the defendant's home on March 6, a Secret Service special agent knocked on the outer door, announced "police," proceeded to wait approximately ten to fifteen seconds, and then knocked and announced again. Upon hearing the sound of movement inside, but no response, a ram was requested by the agent. It was not until 30 to 45 seconds after the first knock-and-announce that the ram was applied to the door. See United States v. Banks, 540 U.S. 31, 37-39 (2003) (holding no violation of rule where officers waited 15 to 20 seconds after announcing their presence before breaking down door to execute narcotics search warrant at house); see also United States v. Brathwaite, 458 F.3d 376, 377-79 & n.2 (5th Cir. 2006) (finding 10 to 15 second wait between knock-and-announce and forced entry reasonable in context of warrant to search home for evidence of counterfeit checks and credit cards).

premises." Defendant's Motion to Suppress Tangible Evidence at 3. The defendant goes on to complain that a copy of the warrant was not provided in this case "until hours later." <u>Id.</u>

However, no provision of rule 41 of the Federal Rules of Criminal Procedure imposes a requirement that a copy of the warrant be disclosed "at the outset" of search. The closest analogous requirement is contained in rule 41(f)(1)(C), which states:

> The officer executing the warrant must give a copy of the warrant <u>and a receipt</u> for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant <u>and receipt</u> at the place where the officer took the property.

(emphasis added).[3]

As the emphasized provisions indicate, officers executing a federal search warrant must provide a copy of the warrant and a receipt for property taken to the occupant. Of course, no receipt for property taken can be provided until after the conclusion of a search. In this case, the executing officers gave a copy of the warrant and the receipt, together at the same time, to an occupant of the premises at the conclusion of the search, approximately two hours after the entry. This was in compliance with rule 41(f)(1)(C).

---

[3]Prior to December 1, 2002, essentially the same language was contained in subdivision (d) of Rule 41.

Defendant's reliance on United States v. Gantt, 194 F.3d 987 (9th Cir. 1999), is to no avail.  Although Gantt held that rule 41 required that absent exigent circumstances, a copy of a federal search warrant for a residence must be presented to the occupant "at the outset of the search," id. at 990, 994, Gantt is of no precedential value today, except perhaps within the Ninth Circuit.  First, five years after Gantt was decided, the Supreme Court held in Groh v. Ramirez, 540 U.S. 551 (2004), that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search."  Id. at 562 n.5.  The Supreme Court reiterated this ruling even more recently in United States v. Grubbs, 547 U.S. 90 (2006), where it held:  "This argument assumes that the executing officer must present the property owner with a copy of the warrant before conducting his search.  In fact, however, neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure imposes such a requirement."  Id. at ___, 126 S. Ct. at 1501 (citation omitted).

The Ninth Circuit appears to cling to the possibility that Groh and Grubbs did not overrule Gantt's interpretation of rule 41.  See United States v. Hector, 474 F.3d 1150, 1154 (9th Cir. 2007) ("It is not clear whether Grubbs II[, 547 U.S. 90 (2006),] overrules the Ninth Circuit's precedent on the requirement to present a copy of the warrant to the owner of the premises at the

time of the search."). But that circuit has held that such a violation of rule 41 is no longer grounds for suppression, in light of the holding in Hudson v. Michigan. Hector, 474 F.3d at 1154-55. Specifically, Hector held that since a violation of the knock-and-announce rule is not grounds for suppression after Hudson, a violation of rule 41's requirement to provide a copy of the warrant in advance--if indeed there is such a requirement in the rule--is similarly not grounds for suppression. Hector, 474 F.3d at 1154-55.

Admittedly, Groh expressly leaves open the possibility that it is unreasonable, and therefore a violation of the Fourth Amendment, for officers executing a search warrant to refuse to provide a copy of a search warrant to an occupant when requested by the occupant prior to commencement of the search. See Groh, 540 U.S. at 562 n.5 ("Whether it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when, as in this case, an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission, is a question that this case does not present."); see also Grubbs, 547 U.S. at ___, 126 S. Ct. at 1503 (Souter, J., concurring in part and concurring in the judgment) ("[I]n Groh v. Ramirez . . . the Court was careful to note that the right of an owner to demand to see a copy of the warrant before making way for the police had not been determined . . .

8

and it remains undetermined today."). In his motion, the defendant asserts that during the execution of the search, he and the other occupant of the residence "kept asking for" the warrant. Defendant's Motion to Suppress Tangible Evidence at 2. The government, however, is prepared to dispute this at a hearing, if necessary.

Moreover, notwithstanding Justice Souter's concurrence in Grubbs, a key holding in that case--that the police need not provide a copy of the warrant to an occupant before searching a home--is not dependent on whether there is a request by the occupant to see the warrant. In Grubbs, the U.S. Postal Inspection Service had obtained an "anticipatory search warrant" of a residence belonging to one Jeffrey Grubbs, asserting in the application that the search would not be conducted until USPIS had made a controlled delivery to the target residence of a package containing videotaped child pornography. 547 U.S. at ___, 126 S. Ct. at 1497. In challenging the search, Grubbs contended that the "triggering condition," i.e., the delivery of the package to his home, needed to have been set out in the warrant itself in order to satisfy the Fourth Amendment's particularity requirement. See id. at ___, 126 S. Ct. at 1500. Grubbs specifically argued that setting out the triggering condition was necessary "to assure the individual whose property is searched or seized of the lawful authority of the executing

officer, his need to search, and the limits of his power to search."  Id. at ___, 126 S. Ct. at 1501 (internal quotation marks and marks of alteration omitted).

The Supreme Court made short shrift of this argument, first by repeating the holding in Groh that the Fourth Amendment and rule 41 did not require presentation of the warrant to the property owner prior to conducting the search.  The Court then reasoned:

> The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is evidence that the requirement of particular description does not protect an interest in monitoring searches.  The Constitution protects property owners <u>not by giving them license to engage the police in a debate over the basis for the warrant</u>, but by interposing, ex ante, the deliberate, impartial judgment of a judicial officer . . . between the citizen and the police, and by providing, ex post, a right to suppress evidence improperly obtained and a cause of action for damages.

Id. (emphasis added; citations and marks of alteration omitted). The Court's statement that the Constitution gives no right to a property owner--or, presumably, a less interested occupant--to "debate" the police over the basis for a warrant is critical to its holding dismissing Grubbs's asserted "monitoring interest." And certainly, if there is no right of an occupant or owner to debate the police over the basis for a warrant, or to monitor an ensuing search, there is similarly no right that the searching

officers honor a request by an owner or occupant to see the warrant prior to commencing the search.

    3.   <u>The Affidavit Established Probable Cause.</u>

In <u>Illinois v. Gates</u>, 462 U.S. 213 (1983), the Supreme Court held that the task of the magistrate to whom a search warrant application is made is to

> make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

<u>Id.</u> at 238.  By contrast, the duty of a reviewing court--the position of this Court--according to <u>Gates</u>, "is simply to ensure that the issuing court had a substantial basis for concluding that probable cause existed."  <u>Id.</u> at 238-39 (internal quotation marks and marks of alteration omitted).  Furthermore, a reviewing court must pay "great deference" to the issuing magistrate's determination that probable cause existed.  <u>Id.</u> at 236 (internal quotation marks omitted).

The defendant asserts that the affidavit makes an insufficient showing of "the nexus between the alleged offenses and the location to be searched."  Defendant's Motion to Suppress Tangible Evidence Seized By Search Warrant at 6.  However, the law in this Circuit allows an issuing magistrate to conclude that evidence or contraband will be found in the residence of a

suspect, without any specific information in the search warrant application as to illegal activity occurring within the residence. See United States v. Laws, 257 U.S. App. D.C. 197, 210, 808 F.2d 92, 105 (1986).

In Laws, a Metropolitan Police Department officer applied for a search warrant for narcotics at two specified hotel rooms at a specific hotel. See id. at 199, 808 F.2d at 94. The affidavits in support of the applications linked the rooms to suspected narcotics activity essentially only in that a confidential source had heard the two persons registered to the rooms engage in "drug related conversations." Id. at 211, 808 F.2d at 106. There was no indication that the conversations had taken place in the targeted rooms. The Court of Appeals nonetheless found such information "certainly specific enough to enable a finding of probable cause to search those rooms." Id. Significantly, the Court held that Circuit caselaw did not require "actual observation of the illegal activity or contraband in the rooms to be searched." Id.

Moreover, defendant's reliance on United States v. Benevento, 836 F.2d 60 (2d Cir. 1987), is misplaced. In that case, a Drug Enforcement Administration special agent had obtained narcotics search warrants for two residences in Florida based primarily on the expert opinion of the agent that "drug traffickers . . . were likely to keep various items of evidence

of drug-related activity . . . in their personal homes." Id. at 70. While the Benevento court did indeed state that the affiant agent's statement, "standing alone, might not be sufficient to establish a link between the Beneventos' current homes and their prior criminal activity," the court held that "a government agent's expert opinion, such as that provided by [the affiant] here, is an important factor to be considered by the judge when making a probable cause determination" that there is such a link. Id. at 71 (emphasis added; internal quotation marks omitted).

In this case, the affiant, U.S. Secret Service Special Agent Ryan Petrasek, recounted in the affidavit that he had been with the Secret Service for more than two years before applying for the search warrant, and had been trained in financial crimes and other white collar investigations. In re Search of 5125 8th Street, N.W., Washington, D.C. 20011-4021, Affidavit at ¶¶ 1, 2. Thus, his expert opinion that the defendant, who was suspected of bank fraud, would have evidence of that crime at his residence, id. at ¶ 4, was an important factor for Magistrate Judge Facciola to take into consideration.

Moreover, SA Petrasek set forth in the affidavit that the defendant had been living at the target address since at least May 15, 2006, and that in the summer of 2006, the defendant had proposed illegal bank-fraud- related activity to a cooperating witness employed by a financial institution. Id. at ¶ 9. In

13

addition, the affidavit recounts that sometime thereafter, the witness supplied the defendant with "15 account numbers and numerous copies of customer's business checks obtained from the financial institution." Id. at ¶ 10. The fact that the illicit activity was proposed during the time the defendant was residing at the target residence, and the fact that the witness gave the defendant "numerous" documents again during the period the defendant was residing at the residence, both support the probable cause determination that evidence of bank fraud would be found at the residence.

Accordingly, there was a substantial basis for Magistrate Judge Facciola to conclude that the affidavit established probable cause that evidence of bank fraud would be found in the target residence.[4]

    4.    <u>Even If The Affidavit Failed To Provide Adequate Probable Cause, The Good-Faith Exception To The Exclusionary Rule Applies.</u>

In <u>United States v. Leon</u>, 468 U.S. 897 (1984), the Supreme Court held that where officers seize evidence in reasonable, good-faith reliance on a search warrant issued by a detached and neutral magistrate, but which warrant is ultimately found to be invalid, the exclusionary rule does not apply. Id. at 925-26.

---

[4] In addition, the pendency of the arrest warrant for the defendant allowed the officers executing the search warrant to conduct a "protective sweep" of the residence and seize any evidence of a crime or contraband, such as a firearm and ammunition. See <u>Maryland v. Buie</u>, 494 U.S. 325, 334-36 (1990).

The Leon Court noted that the good-faith exception it was pronouncing would not prevent suppression "if the magistrate or judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." Id. at 923 (citing Franks v. Delaware, 438 U.S. 154 (1978)).

The defendant in one of his motions broadly asserts in a concluding footnote that "there are misrepresentations and omissions in the affidavit amounting to violations of Franks v. Delaware." Defendant's Motion to Suppress Tangible Evidence at 8 n.3. In order to be entitled to a hearing on such allegations, however, a defendant's attack on the accuracy of an affidavit filed in support of a search warrant application must be "'more than conclusory'" and must be accompanied by "'allegations of deliberate falsehood or reckless disregard for the truth, which allegations must be accompanied by an offer of proof.'" United States v. Gaston, 360 U.S. App. D.C. 62, 65, 357 F.3d 77, 80 (quoting Franks, 438 U.S. at 171), cert. denied, 541 U.S. 1091 (2004).

The defendant has utterly failed to meet this high standard. Accordingly, even if the affidavit failed to establish probable cause, the officers executing the search warrant reasonably relied on it and the exclusionary rule is therefore inapplicable.

## Conclusion

Defendant's motions to suppress tangible evidence should be denied.

>                    Respectfully submitted,
>
>                    JEFFREY A. TAYLOR
>                    UNITED STATES ATTORNEY
>
>           by:      _____
>                    Michael C. Liebman
>                    Assistant United States Attorney
>                    D.C. Bar No. 479562
>                    555 Fourth Street, N.W., room 4231
>                    Washington, D.C.  20530
>                    353-2385
>                    michael.liebman@usdoj.gov