UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Crim. No. 07-61-JDB |
| v. ) | |
| ) | |
| **NATBEYE KOUMBAIRIA,** ) | |
| ) | |
| Defendant. ) | |

Government's Memorandum in Opposition to Defendant's Motion for
<u>Expedited Review and Modification of His Bond</u>

The United States of America, by and through the United States Attorney for the District of Columbia, hereby opposes defendant Natbeye Koumbairia's motion for expedited review and modification of his bond.

<u>Background</u>

On March 6, 2007, the defendant was arrested inside his residence at 5125 Eighth Street, N.W., Washington, D.C., pursuant to a warrant charging him with bank fraud, while U.S. Secret Service special agents and members of the Metropolitan Police Department were executing a search warrant at the residence. During execution of the search warrant, a loaded .45 caliber handgun was recovered along with additional .45 caliber ammunition.

The following day the bank fraud complaint (07-mj-80) was dismissed on motion of the government, and a new complaint charging the defendant with one count of being a felon-in-possession of a firearm and ammunition, based on the recovery of

the loaded handgun, was filed (07-mj-81).[1]  On the same day, March 7, 2007, at his initial appearance on the new complaint before Magistrate Judge John M. Facciola, the government moved for a hearing to determine whether there was any condition or combination of conditions that would reasonably assure the defendant's appearance in court and the safety of other persons, on the grounds that the case was a felony involving possession of a firearm, see 18 U.S.C. § 3142(f)(1)(E), and that the defendant was a serious risk of flight, see id. § 3142(f)(2)(A).

Magistrate Judge Facciola granted the motion for a hearing and also granted the government's motion that the defendant be held temporarily, for three days, pending the hearing.  See id. § 3142(f).  Significantly, the D.C. Pretrial Services Agency attempted to conduct a drug test of the defendant on March 7, but the defendant was purportedly unable to submit a sample.

On March 12, 2007, the parties appeared for the detention hearing, but it was discovered that the Assistant Federal Public Defender representing the defendant had a conflict and could no longer participate.  Because it had been three business days since the temporary hold was imposed, the magistrate judge ordered the defendant released, but scheduled a new detention hearing for March 15.  As a condition of his release, the

---

[1]The defendant has a prior qualifying felony conviction for theft in Maryland.

defendant was ordered to report the next day for orientation into the DCPSA High Intensity Supervision Program, and to comply with DCPSA directions concerning, among other things, drug testing and curfew.

On March 15, 2007, the defendant was charged in a one-count indictment with being a felon in possession of a firearm and ammunition, based on the recovery of the loaded .45 caliber handgun in his home. When the parties appeared for the scheduled detention hearing later the same day, the magistrate judge ruled that he no longer had jurisdiction due to the indictment. As a result, no hearing was held and the defendant remained on release.

On March 21, 2007, before he had even been arraigned on the indictment, the D.C. Pretrial Services Agency issued a status report advising the Court that the defendant had tested positive for marijuana on March 13, 2007, and again on March 21, 2007.[2]

On the same date, March 21, the government filed a motion seeking to hold the defendant without bond, due to risk of flight.

On March 22, 2007, the defendant was arraigned and entered a plea of not guilty. The Court did not rule on the government's

---

[2] The status report classified both positive tests as "residual." However, at a subsequent hearing, the DCPSA officer, Devessdra McKoy, testified that the second positive test, which actually took place on March 20, should not have been classified as residual.

motion, but scheduled a hearing for April 10, 2007, and permitted the defendant to remain in the heightened supervision program at least until the hearing. DCPSA had previously placed the defendant on a 10 p.m. to 6 a.m. curfew, but in light of the government's motion, the Court ordered the curfew modified to 6 p.m. to 6 a.m., and further ordered that the report in person to DCPSA on Tuesdays and Fridays.

At the hearing on April 10, 2007, the government's motion was again taken under advisement by the Court. An updated DCPSA status report, dated April 6, 2007, advised that the defendant tested positive for marijuana on March 27 and April 3, 2007, and had a curfew violation on April 3, as well. A further status conference was set for April 26, 2007.

On April 26, 2007, the parties appeared for the scheduled status conference. A new DCPSA report advised that the defendant had tested positive for marijuana on April 10 and 17, 2007, and had a second curfew violation on April 12, 2007. At the conference, the government advised it would file a new written motion seeking revocation of the defendant's release based upon the repeated incidents of drug use and the curfew violations, which motion was filed later the same evening.

A hearing on the government's motion was held on May 1, 2007, during which the government presented testimony from various DCPSA officials. In response, the defendant presented

4

expert testimony from one Deborah Norris, who opined that all of the positive marijuana drug tests could be classified as residual, based on purported marijuana use by the defendant preceding his March 6 arrest.

At the conclusion of the hearing, the Court granted the government's motion and ordered the defendant detained. In the Court's oral ruling on May 1, and in its written order filed on May 3, the Court ruled that the government had demonstrated by clear and convincing evidence that the defendant had violated the conditions of his release and that he was unlikely to abide by any condition or combination of conditions of release. Specifically, the Court concluded that the defendant had violated the condition that he refrain from the use of illegal drugs. Significantly, the Court stated that it accorded "little weight to the testimony of defense expert Deborah Norris."

The defendant has now moved for a modification of his bond, arguing mainly, once again, that the positive marijuana tests are due to his pre-arrest marijuana use, and again relying on the conclusions of Dr. Norris.[3]

---

[3] The defendant also argues in his recent motion that the asserted curfew violations are de minimis in nature or did not occur at all, and that the Court should have allowed him to remain in HISP or imposed community confinement, but require him to participate in a drug treatment program. The Court, however, did not rely on the curfew violations in revoking the defendant's release, and the Court rejected the defendant's request for sanction of drug treatment as a condition of release.


The motion should be denied.

<u>The Defendant Has Failed to Assert New Material Information.</u>

Title 18, U.S. Code, section 3142(f), provides in pertinent part that a detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue . . . of release." Defendant's recent motion is in essence a motion to reopen the detention hearing, but it utterly fails to assert any new material information. And without such new information, the Court should reject the defendant's motion. See <u>United States v. Dillon</u>, 938 F.2d 1412, 1415 (1st Cir. 1991); <u>United States v. Hare</u>, 873 F.2d 796, 799 (5th Cir. 1989).

With respect to the issue of marijuana use, the defendant's motion re-argues several points directly addressed at the May 1 hearing, specifically, (1) that one of the government's witnesses, Alan Petty, disagreed with the conclusion of the DCPSA that the April 17 test showed new drug use; (2) that at the hearing DCPSA Officer McCoy stated that the March 20 positive

---

The defendant also asserts that his life is in jeopardy at the D.C. Jail from other inmates who believe him to be "a snitch." Counsel for the government has contacted defense counsel to obtain the names of those inmates the defendant believes are a threat to his safety, in order that the defendant can be separated at the Jail from those inmates.

drug test should not have been characterized as "residual" in her report; and (3) that all of the positive drug tests are due, in his view, to the storage and release from the defendant's adipose stores of marijuana metabolites from marijuana he ingested before his arrest.

The only even arguably new information concerns this third point. The defendant has attached to his motion a memo, dated June 8, 2007, from Dr. Norris, along with an updated graph plotting the defendant's metabolite levels on the various tests. However, the memo and graph offer nothing new on this issue, other than to reduce to writing a discussion about the defendant's May 1, 2007, drug test, which test was addressed by the parties orally at the hearing. As the Court noted in its oral and written findings, the substantial decline in metabolite levels shown in the May 1 test--coming five days after the defendant learned that there would be a hearing on the whole issue of his marijuana use which could result in his incarceration--shows only that the defendant is capable of abstaining from drug use when it matters to him.

Accordingly, the Court should deny the motion based on the defendant's failure to present any new material information.

> Defendant Offers Nothing To Suggest He Will Comply With A
> Condition Of Release To Refrain From Using Illegal Drugs.

By statute, a federal criminal defendant released on his own recognizance, or upon execution of an unsecured appearance bond,

must always be subject to the condition that he refrain from committing a federal, state or local crime while on release. 18 U.S.C. § 3142(b). Also, where the judicial officer determines that such release will not assure the defendant's appearance or the safety of other persons, the judicial officer may impose additional conditions, including a requirement that the defendant refrain from illegal drug use. Id. § 3142(c)(1)(B)(ix).

The defendant's recent motion fails to demonstrate that this defendant will refrain from committing new offenses (i.e., possession of marijuana) while on release or that he will refrain from using marijuana, for the motion does nothing to refute the Court's conclusion that he previously used marijuana while on release in this case. Tellingly, the new memo from Dr. Norris states only that there are "two viable ways" to interpret the test data from March and April--new use or residual metabolite release--but then offers no scientific opinion as to which is more likely to have occurred in this case. Just as she failed to do at the hearing, Dr. Norris's new memo does not address any factors in the defendant's lifestyle--other than his admitted pre-arrest frequent marijuana use[4]--that might provide scientific support for a residual-use conclusion. Instead, Dr. Norris's new

---

[4] At the hearing, Dr. Norris testified that a person's body weight, level of physical activity, consumption of other drugs, and history of illnesses are all factors that affect whether a positive marijuana test reflects new use or is evidence of past use, i.e., is merely residual.

memo lamely relies on the DCPSA report that mistakenly characterized the March 20 positive test result as residual use.

Finally, the defendant's motion and Dr. Norris's new memo utterly fail to address the issue of the defendant's high metabolite level several weeks after his arrest.  At the hearing, Dr. Norris testified that 27 days is the outer limit of the half-life for marijuana, drastically contradicting the government's expert who put the half-life for marijuana at just three days.  Yet over the <u>28-day</u> period between March 13 and April 10, the defendant's metabolite level declined only by about 14 per cent.[5]  Even accepting her opinion on the half-life period, why was the defendant's metabolite decline over the <u>28-day</u> period between March 13 and April 10 so far short of 50%, if he had not used marijuana at all since at least March 6?  The defendant has chosen to remain silent on this issue, notwithstanding the Court's reliance on it in its May 1 ruling ordering the defendant detained.

## Conclusion

The defendant's motion should be denied.

---

[5] Since there were two tests on each date, the 14% figure is obtained by computing the difference between the average metabolite levels on each date.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY

                /s/
by:  _____
        Michael C. Liebman
        Assistant United States Attorney
        D.C. Bar No. 479562
        555 Fourth Street, N.W., room 4231
        Washington, D.C.  20530
        353-2385
        michael.liebman@usdoj.gov