UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No.  07-61 (JDB) |
| v. : | |
| : | |
| NAIBEYE KOUMBAIRIA, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant's Motion for Judgment of Acquittal and/or New Trial filed October 9, 2007.[1]  As grounds for this Opposition, the United States relies on the following points and authorities:

I.   The Evidence Was Sufficient to Sustain Defendant's Conviction

The Defendant claims the government presented no credible evidence to establish that he knowingly possessed the firearm  (Defendant's Motion at 2).  Defendant's claim lacks merit.

A.   Standard of Review

The standard of review for a challenge to the sufficiency of the evidence is well established. In evaluating such a claim, this Court views the evidence in the light most favorable to the government, recognizing that it is the primary role of the trier of fact to determine credibility, weigh the evidence, and draw justifiable inferences from the evidence presented.  See United States v.

---

[1] The government notes the Defendant's sufficiency claim is the only claim properly brought pursuant to Fed. R. Crim. P. 29. See Defendant's Motion at 1-2.  The government understands that the remainder of the Defendant's claims are raised pursuant to F.R.E. 33(b)(2). See Defendant's Motion at 3-6. Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the [C]ourt may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). As we explain in the text, the Defendant's claims of error must fail.

Wahl, 290 F.3d 370, 375 (D.C.), cert. denied, 537 U.S. 862 (2002); United States v. Singleton, 702 F.2d 1159, 1163 (D.C. Cir. 1983); Crawford v. United States, 375 F.2d 332, 334 (D.C. Cir. 1967).

      B.      Legal Principles and Analysis

To convict the Defendant of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One year, the government had to prove, *inter alia*, that the Defendant knowingly possessed a firearm.[2] Here, the government presented sufficient evidence that the Defendant possessed a high point .45 caliber semiautomatic pistol. A cooperating witness testified that he had gone to the Defendant's home on three separate occasions, and he described the Defendant's home and identified it in photographs. The cooperating witness testified that during his second visit at the Defendant's home, while he was in the Defendant's basement, he asked the Defendant whether the Defendant had a gun. In response, the Defendant went upstairs, and then returned to the basement with a gun in his hand. Additionally, the cooperating witness testified that the third time he went to the Defendant's home, he saw the gun located on a table in the Defendant's basement. The cooperating witness specifically testified that the gun he saw in the Defendant's hand was the same gun he saw on the table in the Defendant's basement. The cooperating witness described the gun as a high point gun, the handle of which was wrapped in duct tape, and he identified the gun which had been recovered from the Defendant's home during the execution of a search warrant. The jury was free to credit this testimony, and to reasonably infer from it that the Defendant knowingly possessed a high point .45 caliber semiautomatic pistol, and that the Defendant's possession was either actual or constructive, or both.

---

[2] The Defendant does not appear to specifically challenge the other elements of the offenses, to which the Defendant stipulated at trial. Thus, we only discuss the Defendant's claim that the evidence was insufficient to establish that he knowingly possessed a gun.

See United States v. Littlejohn, 489 F.3d 1335, 1338 (D.C. Cir. 2007) (noting that it is the function of the jury to determine credibility, weigh evidence, and draw reasonable inferences of fact); see also United States v. Richardson, 161 F.3d 728, 733 (D.C. Cir. 1998) (holding evidence sufficient to support gun conviction based on constructive possession, and finding jury was free to credit the testimony of a witness whose identification of gun "faltered somewhat").

Moreover, the cooperating witnesses's testimony was corroborated by other evidence in the case. During trial, United States Secret Service ("USSS") agent Robert Burroughs testified that he recovered a high point gun from the Defendant's home, the handle of which was wrapped in tape. See Littlejohn, 489 F.3d at 1339-40 (finding that jury is entitled to infer that a person exercises constructive possession over items found in his home, even when home is shared with others). Viewing this evidence in the light most favorable to the government, with all reasonable inferences drawn from the facts, there was sufficient evidence in this case on which a rational trier of fact could find beyond a reasonable doubt that the Defendant knowingly possessed a gun. See United States v. Alexander, 331 F.3d 116, 127 (D.C. Cir. 2003) (holding there was sufficient evidence to convict defendant of unlawful possession of a firearm where police recovered gun lying in defendant's car, which was parked outside of defendant's workplace, after defendant's girlfriend had called police to report that defendant had a gun).

In sum, the Defendant's motion should be denied because there was sufficient evidence to support the jury's finding that the Defendant knowingly possessed a high point .45 caliber semiautomatic pistol, and the jury's decision to credit the cooperating witness's testimony, which was consistent with the other evidence in the case, should not be disturbed.

  II.  The Court Did Not Err in Declining to Allow Defendant to Introduce Prosecutor's Notes For Impeachment Purposes

    A.  Background

The trial evidence and bench trial discussions established that prior to trial, the cooperating witness met with USSS agents on multiple occasions, and made statements to USSS agents concerning his observations of the gun at the Defendant's home. On one of these occasions, the prosecutor was present and she took notes. A portion of the cooperating witness's statements were memorialized in the prosecutor's notes. Specifically, the prosecutor made rough notations related to the number of times the cooperating witness had been at the Defendant's home, the number of times he had seen the gun and when, and the color of the tape on the handle of the gun.

Before the cooperator testified on direct examination, the prosecutor informed the Defendant's counsel that the cooperating witness had given different descriptions of the color of the tape on the handle of the gun, and provided Defendant's counsel with a copy of the prosecutor's notes. The Defendant now claims that the Court erred in refusing to allow the Defendant to admit into evidence the prosecutor's notes. The Defendant also claims that he was unable to impeach the cooperating witness with his inconsistent statements. He is wrong.

    B.  Analysis

Although the prosecutor's notes were properly disclosed pursuant to Brady v. Maryland, the notes were not Jencks material, and the Court properly declined to allow the Defendant to admit into evidence the notes for impeachment purposes.[3]  See Brady v. Maryland, 373 U.S. 83 (1963) ; see

---

[3] The government notes that the prosecutor erred in favor of disclosing the entire interview notes, but the prosecutor's *Brady* obligation could have been satisfied by providing a redacted version of the interview notes.

4

also 18 U.S.C. § 3500; United States v. Service Deli, Inc., 151 F.3d 938, 942-43 (9th Cir. 1998)(holding that prosecutor's interview notes of government witness constitutes *Brady* material to extent the notes contain conflicting statements by the witness ); United States v. Alvarez, 86 F.3d 901, 904 n.2 (9th Cir. 1991), cert. denied, 519 U.S. 1082 (1997) (finding that rough notes that are not discoverable under *Jencks* must be disclosed pursuant to *Brady* if notes contain material and exculpatory information).

First, the prosecutor's notes were not required to be produced under the *Jencks* Act. The notes consist of a single page of short, cryptic, rough, incomplete writing.[4] See Defendant's Motion; Defendant's Exhibit 1. The prosecutor's notes do not constitute a "statement" of the cooperating witness under the *Jencks* Act. See United States v. Fowler, 608 F.2d 2, 6 (D.C. Cir. 1979) (holding that prosecutor's interview notes were not "statements" that had to be produced under *Jencks* Act where notes were "short, very cryptic, and only set forth a few references to scattered facts").

Second, it would have been improper to allow the Defendant to impeach the cooperating witness with interview notes that do not constitute the witness's own "statement." Here, the cooperating witness testified that he was unaware that the prosecutor had taken notes. Certainly, the cooperating witness did not sign or otherwise adopt the prosecutor's notes. Thus, it would have been unfair to allow the Defendant to impeach the cooperating witness with the prosecutor's notes. See United States v. O'Malley, 796 F.2d 891, 899 (7th Cir. 1986) (finding that "[t]he reason that the *Jencks* Act requires the witness to sign or otherwise approve the statement is that the witness may

---

[4] The second page of the prosecutor's notes do not relate to the number of times the cooperating witness went to the Defendant's home, when the witness saw the gun at the Defendant's home, or how the witness had described the gun. See Defendant's Motion; Defendant's Exhibit 1.

be impeached by this evidence . . . . Obviously, if the witness has not expressly approved the statements, it would be unfair to use this evidence to impeach him.").[5]

Third, the Defendant made use of the *Brady* material contained in the prosecutor's note. The cooperating witness admitted that he had described the tape on the handle of the gun as being gray in color at one time, and then black in color at another time. The cooperating witness explained that he initially described the tape on the handle of the gun as "duct tape," and he did not describe the color of the tape. Thereafter, he described the tape as gray in color. The cooperating witness also testified that on another occasion, during a witness conference at which USSS Agent Petrasek was present, the cooperating witness described the tape as black in color. Ultimately, the cooperating witness testified that he knew there was duct tape on the handle of the gun and he thought it was gray in color. Additionally, the Defendant called USSS Agent Ryan Petrasek in his case in chief. Agent Petrasek testified that the cooperating witness had indicated the tape on the handle of the gun was gray, and then later indicated it was black. The Defendant had ample opportunity to, and did, make use of the *Brady* information during this trial.

Moreover, the evidence established that aside from the color of the tape on the gun handle, the cooperating witness did not previously make statements inconsistent with his trial testimony. The Defendant points to the prosecutor's notes in support of his argument that the cooperating

---

[5] The Defendant complains that the Court refused to allow the Defendant to call the prosecutor as a witness. See Defendant's Motion at 3. The government notes that the Defendant failed to establish there was a compelling need to call the prosecutor as a witness at trial, and the Court properly denied the Defendant's request to do so. See Goldberg v. United States, 425 U.S. 94, 95 (1976) (finding that defense counsel have "no right to call [g]overnment lawyers to authenticate their notes"); see also United States v. Dupuy, 760 F.2d 1492, 1498 (9th Cir. 1985) (finding that "[a]s a general rule federal courts refuse to permit a prosecutor to be called as a witness in a trial in which he is participating unless there is a 'compelling need'").

witness gave prior inconsistent statements. Specifically, the Defendant alleges that the cooperating witness told USSS agents and the prosecutor that the gun was a nine millimeter, and that he saw the gun at the Defendant's home on three separate occasions. The Defendant's argument is without merit, and is not supported by the evidence at trial.

First, the cooperating witness testified that he had been to the Defendant's home three times, and he had seen the gun at the Defendant's home only twice. Counsel for the Defendant spent a significant amount of time covering this issue on cross examination. Still, the cooperating witness testified that he first saw a gun at the Defendant's home during his second visit to the home. The cooperating witness testified that during his second visit to the Defendant's home, he saw the Defendant hold a high point gun, with a red dot on the side, the handle of which was wrapped in tape and rubber bands. The cooperating witness further testified that during his third visit to the Defendant's home, he saw the same gun for a second time. On this occasion, the gun was lying on a table in the basement of the Defendant's home. At trial, the Defendant's witness, Agent Petrasek, corroborated the cooperating witness's testimony in this regard, and there was no basis to impeach the witness.[6]

Second, the cooperating witness admitted that he had told USSS agents and the prosecutor that he thought the gun was a nine millimeter, but that he was not sure about the caliber of the gun. Again, the Defendant's witness, Agent Petrasek offered corroborating testimony that the cooperating witness had indicated that he *thought* the gun was a nine millimeter. Here, the jury was not deprived

---

[6] Agent Petrasek testified that the cooperating witness had reported seeing the gun in the Defendant's home twice: once in the Defendant's hand, and once on a table. Agent Petrasek was unsure during which of his visits to the Defendant's home the cooperating witness saw the gun.

of evidence of the cooperating witness's prior statements, and the record does not support the Defendant's claim that the cooperating witness's prior statements were in fact inconsistent with his testimony at trial.

    III.    <u>The Court Did Not Err In Denying Defendant's Request for Informer's Instruction</u>

The Court properly denied the Defendant's request for Modern Federal Jury Instruction 7-14 concerning the testimony of an informer.[7] The Court properly considered the fact that the government had previously referred to the cooperating witness as an "informant," and correctly found that the cooperating witness did not satisfy the definition of a "government informer." The Court noted that the cooperating witness had not yet entered into a plea agreement, nor had he been charged with any criminal offense at the time that he provided information to the government. There was no evidence to suggest that the cooperating witness was paid for information he provided. See United States v. Lee, 506 F.2d 111 (D.C. Cir. 1974) (holding that refusal to give cautionary instruction concerning informant testimony was not reversible error where the witness was not paid for her information, and court found that witness was not an informer). Moreover, the Court properly exercised its discretion by providing the jury with an adequate substitute instruction. See United States v. Thorne, 527 F.2d 840, 841 (D.C. Cir. 1975) (holding that trial court properly instructed jury on testimony of an accomplice rather than of an informer, and finding that the instruction given "adequately cautioned the jurors and informed them of [the witness's] interest"). In this case, the Court provided Criminal Jury Instruction 2.22A, which adequately cautioned the jury of the cooperating witness's interest in the case. This instruction cautioned that "[t]he testimony of

---

[7] See 1 Leonard B. Sand et al., Modern Federal Jury Instructions, Instruction 7-14 at 7-52 (2004 ed.).

a witness who has entered into a plea agreement should be received with caution and scrutinized with care." Criminal Jury Instructions for the District of Columbia, Instruction No. 2.22A (4th Ed. 2007); cf. United States v. Prawl, 168 F.3d 622 (2d Cir. 1999). Here, the Court properly declined to give the "government informer" instruction because the cooperating witness did not satisfy the definition of an informant, and the instruction given adequately addressed the concern that the jury should carefully scrutinize the cooperator's testimony and consider his interest in the case.

    IV.    The Court Did Not Err in Declining to Give Anti-Deadlock Instruction

The Court was not required to give the anti-deadlock instruction in response to the jury's note that it was "unable to reach a unanimous decision," and the Court's instruction to "continue deliberating" was entirely proper. The jury had only briefly deliberated, and that note was the first note suggesting the jury might be deadlocked. Certainly, the language in the jury note did not indicate that the jury was hopelessly deadlocked. Here, the Court's response to the jury note was concise, content-neutral and contained no words of pressure. See United States v. Dorsey, 865 F.2d 1275 (D.C. Cir. 1989). Thus, the Court's response did not imply that a verdict must be reached or otherwise coerce the jury. See United States v. Warren, 594 F.2d 1046 (5th Cir. 1979) (holding that trial court's "admonitions to the jury to continue its deliberations did not coerce the jury to render a guilty verdict"); see also United States v. Kramer, 955 F.2d 479 (7th Cir. 1992) (holding that trial court's instruction to jury to "continue it's deliberations" after it indicated it was deadlocked did not coerce the jury to return guilty verdict).

**CONCLUSION**

WHEREFORE, the United States respectfully submits that Defendant's Motion for Judgment of Acquittal and/or New Trial should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

_____/s/_____
DEBRA L. LONG-DOYLE
Assistant United States Attorney
D.C. Bar No. 362518
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7396
Debra.Long-Doyle@usdoj.gov

_____/s/_____
PRECIOUS MURCHISON
Assistant United States Attorney
Maryland Bar
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7396
Precious.Murchison@usdoj.gov

UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | Criminal No.  07-61 (JDB) |
| v. : | |
| : | |
| **NAIBEYE KOUMBAIRIA,** : | |
| : | |
| **Defendant.** : | |

**ORDER**

UPON CONSIDERATION of the Defendant's Motions for Judgment of Acquittal and/or New Trial, and the Government's Opposition thereto, the record herein, and for the reasons set forth in the Government's Opposition and for good cause shown, it is

ORDERED, that the Defendant's Motion is DENIED.


_____        _____
DATE                                                  JOHN D. BATES
                                                             UNITED STATES DISTRICT JUDGE