## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

NOV 1 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

Plaintiff,

v.

NATBEYE E. KOUMBAIRIA,

Defendant.

Criminal No. 07-0061 (JDB)

## MEMORANDUM OPINION AND ORDER

On September 7, 2007 following a jury trial, defendant Naibeye Koumbaria was convicted

of unlawful possession of a firearm and ammunition by a person previously convicted of a crime

punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

He has now moved for judgment of acquittal or a new trial pursuant to Fed. R. Crim. P. 29(c) and

33, raising four principal arguments: (1) insufficiency of the evidence concerning knowing

possession of the firearm and ammunition; (2) error in the failure to permit him to introduce the

prosecutor's interview notes to impeach the cooperating witness; (3) error in the denial of

defendant's request for the "informer's instruction"; and (4) error in the failure to give the standard

"anti-deadlock" charge when the jury indicated that it had not reached a unanimous verdict after

four (4) hours of deliberations.  The Court will consider each argument in turn.  None has any

merit.

## DISCUSSION

### I. Sufficiency of the Evidence

Defendant first challenges his conviction based on an asserted insufficiency of the

-1-

evidence that he knowingly possessed the firearm in question. Def.'s Mot. for J. of Acquittal and/or New Trial (hereinafter "Def.'s Mot.") at 2. In addressing this claim, the Court must view the evidence in the light most favorable to the government, because it is the primary role of the jury -- as the trier of fact -- to determine credibility, weigh the evidence, and draw justifiable inferences from that evidence. See United States v. Wahl, 290 F.3d 370, 375 (D.C. Cir. 2002); United States v. Singleton, 702 F.2d 1159, 1163 (D.C. Cir. 1983). To sustain a conviction on the Section 922(g)(1) charge, the government was required to prove that defendant knowingly possessed the seized firearm.[1]

Here, the evidence is more than sufficient. The cooperating witness ("CW") testified that he went to the defendant's home on three occasions, and that on his second visit, while he was in the basement, defendant went upstairs and returned with a gun. CW saw the same gun on a table in defendant's basement the third time he visited. He described the gun as a "high point" with the handle wrapped in duct tape, and identified the gun seized from defendant's home as the same gun. The testimony of CW was corroborated by Secret Service agent Burroughs, who testified that he recovered a high point gun with its handle wrapped in duct tape from defendant's home.

The jury was free to credit this testimony and to reasonably infer that defendant knowingly possessed a high point .45 caliber semiautomatic pistol, either actually or constructively. See United States v. Littlejohn, 489 F.3d 1335, 1338 (D.C. Cir. 2007). When the evidence is viewed in the light most favorable to the government, with all reasonable inferences drawn, the Court has no difficulty concluding that there was certainly sufficient evidence on which a rational jury could

---

[1] Defendant does not challenge the other elements of the charged offense, which were stipulated.

find beyond a reasonable doubt that defendant knowingly possessed a firearm.  <u>See</u> <u>United States</u>

<u>v. Alexander</u>, 331 F.3d 116, 127 (D.C. Cir. 2003).  The jury's determination on this point should

not be disturbed, and defendant's insufficiency of the evidence claim will therefore be denied.

## II. Prosecutor's Notes for Impeachment

Before CW testified, the prosecutor informed defendant's counsel that CW had previously

given different descriptions of the color of the tape on the gun handle, and therefore provided

defendant's counsel with her notes of a prior interview with CW.  At trial, defendant sought to

introduce these notes into evidence for impeachment of CW -- on the tape color and on the

number of times CW visited defendant's home -- and even sought to call the prosecutor as a

witness.  Defendant now claims as error this Court's decision not to permit his direct use of the

prosecutor's notes for impeachment of CW.  Def.'s Mot. at 3-4.

Defendant's assertion that the prosecutor's notes are statements of a government witness

discoverable under the Jencks Act, 18 U.S.C. § 3500, is unfounded.  A prosecutor's interview

notes do not constitute a "statement" under that statute, particularly where, as here, they are short,

cryptic, rough, and incomplete.  <u>United States v. Fowler</u>, 608 F.2d 2, 6 (D.C. Cir. 1979).  They

must, however, be produced under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), if they contain

contradictory statements of a government witness useful for impeachment.  <u>See</u> <u>Giglio v. United</u>

<u>States</u>, 405 U.S. 150, 153-54 (1973); <u>United States v. Service Deli, Inc.</u>, 151 F.3d 938, 942-43

(9th Cir. 1998); <u>United States v. Alvarez</u>, 86 F.3d 901, 904 n.2 (9th Cir. 1996).  Here, the

government properly produced the notes as <u>Brady</u> material.

But it would not have been appropriate to permit defendant to impeach CW with the

prosecutor's notes, because the notes themselves do not constitute a "statement" by CW for

impeachment purposes. CW did not sign, approve, or otherwise adopt the prosecutor's notes, and he testified that he was not even aware that the prosecutor had taken any notes during the interview. Hence, direct use of the notes as evidence to impeach CW would have been improper. See United States v. O'Malley, 796 F.2d 891, 899 (7th Cir. 1986).

The defendant did, nonetheless, have a full opportunity to make use of the notes as Brady material during the course of the trial, and did so in several respects.[2] First, CW was thoroughly cross-examined as to the color of the tape on the handle of the gun, and admitted he had described it as gray on one occasion and as black on another. He explained the discrepancy, and defendant had ample opportunity to examine him on his inconsistent descriptions. Moreover, a Secret Service agent also testified that CW had indicated different colors of the tape on separate occasions. The notes themselves, if defendant had been allowed to introduce them, add nothing to defendant's effort to discredit CW on this point.

Moreover, the notes do not reveal any inconsistency with regard to CW's testimony about the caliber of the gun. CW admitted that he told the agents and the prosecutor that he thought the gun was a nine-millimeter pistol, but he was not certain of that fact. A Secret Service agent corroborated that testimony. The notes are consistent with that concession, and hence defendant was not denied any opportunity to impeach CW on this point.

Finally, there is no significant discrepancy between CW's testimony and the notes as to the occasions on which CW saw the gun in defendant's home. CW testified that he went to defendant's home three times, and saw the gun on the second and third visits, which he described

---

[2] Defendant's request to call the prosecutor as a witness was properly denied because defendant failed to show a compelling need to call her to the stand. See Goldberg v. United States, 425 U.S. 94, 95 (1976); United States v. Dupuy, 760 F.2d 1492, 1498 (9th Cir. 1985).

in detail. Defense counsel painstakingly cross-examined CW as to each of these two events. CW's testimony was corroborated by the Secret Service agent. Although it is true that the prosecutor's notes may support the view that CW was at defendant's home on four occasions, and may have seen the gun briefly in defendant's hand at another time -- both facts that do not help defendant's case -- it is the same two sightings of the gun in defendant's basement that are described in the notes <u>consistently</u> with CW's testimony. Again, defendant was not deprived at trial of any meaningful opportunity to cross-examine or impeach CW, and the notes do not materially deviate from CW's testimony on this issue.

For all of these reasons, the decision not to allow defendant to introduce the prosecutor's notes from her interview of CW as Jencks Act statements or to use the notes for impeachment of CW was not error.

## III. Informer's Instruction

At trial, the Court concluded that CW was not a government informer and therefore the jury instruction concerning the testimony of an informer was not given. Instead, the Court gave the cooperating witness instruction that informs the jury of the cooperating witness's interest in the case and specifically notes that the testimony of a witness who has entered into a plea agreement should be received cautiously and scrutinized carefully. <u>See</u> Criminal Jury Instructions for the District of Columbia, Instruction No. 2.22A (4th ed. 2007). Defendant challenges this choice. Def.'s Mot. at 4.

The Court gave some weight to the fact that the government, in pretrial proceedings, had referred to CW as an "informant." Ultimately, however, the Court concluded that CW did not in fact satisfy the legal definition of a government informer because he was not paid and, at the time

he provided information to the government, he had not yet entered into a plea agreement or even

been charged with any criminal offense.  Moreover, the instruction given by the Court adequately

cautioned the jury regarding CW's interest in the case.  Under the circumstances, the Court did not

err in its choice of instructions.  See United States v. Thorne, 527 F.2d 840, 841 (D.C. Cir. 1975)

(holding that instruction on testimony of accomplice rather than informer was adequate and

proper); United States v. Lee, 506 F.2d 111, 122 (D.C. Cir. 1974) (upholding refusal to give

informer instruction where witness was not paid and trial court concluded witness was not an

informer).

## IV. Anti-Deadlock Charge

Defendant's challenge to the Court's decision not to give the anti-deadlock instruction in

response to the jury's note -- after, it bears repeating, only four hours of deliberations -- that it was

unable to reach a unanimous decision is somewhat curious.  Def.'s Mot. at 5-6.  The Court simply

directed the jury to continue its deliberations in response to a note that, by its timing and language,

did not indicate that the jury was hopelessly deadlocked.  No pressure was exerted and there was

no implication that a verdict had to be returned.  If anything, the Court's instruction was milder

than whatever "anti-deadlock" instruction defendant now has in mind, and neither the four-hour

period of prior deliberations (following a short trial) nor the return of a verdict roughly an hour

after the Court's instruction to "continue deliberations" supports defendant's contention that it was

prejudicial or coercive.  See, e.g., United States v. Kramer, 955 F.2d 479, 489 (7th Cir. 1992)

(holding that instruction to continue deliberations did not coerce jury to return a guilty verdict);

United States v. Warren, 594 F.2d 1046, 1050 (5th Cir. 1979) (same); see also United States v.

Dorsey, 865 F.2d 1275, 1279 (D.C. Cir. 1989) (permitting concise, content-neutral instruction

with no words of pressure).

## **CONCLUSION**

Accordingly, defendant's [40] motion for judgment of acquittal and/or new trial is

**DENIED**.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated:   <u>November 14, 2007</u>