**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-061 (JDB)** |
| | : | |
| **v.** | : | |
| | : | |
| **NAIBEYE KOUMBAIRIA,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following memorandum to assist the Court in fashioning an appropriate sentence in this case.

## I. FACTS

On March 15, a federal Grand Jury returned an indictment charging the defendant with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18, United States Code, Section 922(g)(1). The gun and ammunition were recovered from a closet in defendant's residence located at 5125 8th Street, N.W., Washington, D.C. 20011-4021 on March 6, 2007, when special agents from the United States Secret Service executed an arrest and search warrant at that location in connection with a bank fraud investigation. The defendant, who has a prior felony conviction, was arrested for the possession of the firearm and ammunition. At the time of his arrest, it was determined that the defendant shares his residence with three other persons: Joann Smith, the mother of the 5 year old child the two have together and Smith's 14 year old child by another relationship.

The search warrant was obtained during the course of a bank fraud conspiracy investigation which has been conducted by the United State Secret Service ("USSS") since February 2006. Based upon information provided by cooperating witnesses, the Secret Service Agents obtained a warrant for defendant's home in order to search for evidence of the ongoing Bank Fraud. At trial, government cooperator Quintin Sutton testified that in or about June of 2006, he was over the defendant's house on three occasions. On his second visit to the defendant's home they were in the basement and the defendant went upstairs and returned to the basement with a gun which Mr. Sutton described in specific detail – that is as a Hi point with duct tape wrapped around the handle. Sutton also saw the same gun on a table in defendant's basement on the third time he visited defendant's house. On each occasion, there were several other persons present in defendant's basement. Finally, at trial, Mr. Sutton identified the gun recovered from defendant's house, as the same one he had previously seen at defendant's house. The testimony of Mr. Sutton was corroborated by Secret Service Agent Burroughs, who testified that he recovered a Hi point gun with its handle wrapped in duct tape from the defendant's home.

## II. ARGUMENT

### A. The Court Should Sentence the Defendant Within the Range Established by the United States Sentencing Guidelines.

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 756. However, the Court expressly refused to invalidate

the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. Section 3553(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at 769.

"The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. Although Booker holds that uniformity cannot be achieved through mandatory Guidelines, nonetheless, because reducing unjustified disparities was the underlying purpose of federal sentencing reform, that goal should still weigh heavily in the determination of a reasonable sentence.

A sentence within the Guideline range is reasonable in this case because it would help further the goals articulated in 18 United States Code, Section 3553(a) such as "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; © to protect the public from further crimes of the defendant; and (D) to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

**C. In the Instant Case, the Court Should Sentence the Defendant at the High End of the Guidelines.**

The government agrees with the Guidelines calculations of the Probation Department. The Base Offense Level is 14, since the defendant is a prohibited person as described under 18 U.S.C. §§ 922(g)(1), a person convicted in any court of a crime punishable by imprisonment for a term exceeding one year. Specifically, the defendant was convicted of Theft over $500. in Montgomery County District Court. The defendant's Criminal History Category is II pursuant to Chapter 5, Part A of the Guidelines. Consequently, the defendant's Guideline range is 18 to 24 months.

Pursuant to 18 United States Code, Section 3553(a), the Court should impose a sentence of 24 months. This high-end Guidelines sentence is appropriate for a number of reasons. First, the serious nature and circumstances of the offense justifies imposition of a 24 month sentence. At the time defendant possessed the Hi Point pistol, it was against the law for him to do so. Although ignorance of the law is no excuse for the commission of a crime, even if defendant was unaware of the criminal violation before his conviction of Theft over $500, he certainly was aware of the violation following his conviction. Yet and still, the defendant knowingly violated the law by being a felon in possession of the firearm. Not only did he have the firearm, but he had a cache of ammunition, including, very dangerous and deadly hollow point bullets, demonstrating that he not only possessed the firearm, but that he likely had an intent to use it. Further demonstrating his intent to use the gun, the defendant, on at least two occasions, displayed that firearm to Quintin Sutton, in the presence of several other men who were visiting in the basement of his home. Moreover, he kept that gun in a house where defendant's 5-year-old son and the 14-year-old daughter of his son's mother

also resided. When discovered by Special Agent Burroughs who found the firearm, it was in a ready-to-fire posture, with a bullet in the chamber of the gun.

Second, a sentence of 24 months is necessary to promote respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public. As noted above, and by the nature of the charged crime, the defendant had a prior conviction for theft over $500 when he committed the instant offense. Moreover, he had a prior conviction for possession of marijuana. While on probation, for that offense, his probation was extended, most likely because of a probation violation. When arrested for the instant offense, the defendant was initially released into the community. However, this Court revoked his release, after the defendant continuously violated his conditions of release, by repeatedly smoking marijuana. Defendant, through his actions demonstrated time-after-time, his total disrespect for the law.

Finally, a sentence of 24 months imprisonment would provide just punishment to the defendant in this case. Here, the defendant clearly knew what he was doing was wrong, when he obtained the gun, when he cocked the trigger to release a bullet into the chamber and each time he showed it to his cohorts, to let them know that he had something to protect himself. Moreover, the defendant failed to accept responsibility for his actions, first, by denying that he violated his conditions of release by repeatedly smoking marijuana and next by pleading not guilty and suggesting, through counsel, that the gun belonged to someone else living in the house, such as the mother of his son. Of course the defendant has the right to go to trial and have the government prove it’s case.

However, the jury disagreed with his defense and found him guilty as charged. The Defendant's crime demands a sentence of 24 imprisonment.[1]

**IV. CONCLUSION**

Wherefore, the government respectfully requests that the Court sentence the Defendant at the highest end of the Guidelines to a period of 24 months of incarceration.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar 498-610

______________________________
Debra L. Long-Doyle
D.C. Bar No. 462518
Louis Ramos
D.C. Bar Number 472176
Assistant United States Attorneys
Federal Major Crimes
555 4th Street, N.W.
Washington, DC 20538
Phone: 202-305-0634
Debra.Long-Doyle@USDOJ.Gov
Louis.Ramos@USDOJ.Gov

---

[1] Defendant argues that he is entitled to a sentence lower than the low end of the Guidelines because of his status as an illegal alien, pursuant to United States, v. Smith, 27 F.3d 649 (D.C. Cir. 1994). In order for the so-called, Smith departure to apply, the difference in severity between the confinement of the defendant and that of an American citizen must be "substantial and the sentencing court must have a high degree of confidence that it will in fact apply for a substantial portion of the defendant's sentence." Id. at 655. There is no evidence that such is the case here. Moreover, if the Court were inclined to apply the Smith departure to the extent that the defendant will not have the opportunity to have, "to the extent practicable ... a special community assignment for the last 10% of a sentence of a prisoner's term(but no more than 6 months)", pursuant to 8 U.S.C. Section 36249(c), at most, the defendant should get a six month departure. However, that is not automatic, and as the Court noted in Smith, "Congress may not have intended [that provision] to apply to deportable aliens at all," such as the defendant in this case. Id. At 654.